1

2

3

4

5 UNITED STATES DISTRICT COURT

6 SOUTHERN DISTRICT OF CALIFORNIA

7

8 | BRUCE F. BICKOFF, | Case No.:  14CV1065 BEN (WVG)

9 | Plaintiff, | **ORDER:**

10 | v.

11 | WELLS FARGO BANK N.A., | **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant.

12

13 | **(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

14

15

16 | **(3) DENYING MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT AS MOOT**

17

18 | [Docket Nos. 62, 63, 76, 90, 93]

19      Plaintiff Bruce Bickoff and Defendant Wells Fargo Bank N.A. have filed cross

20 motions for summary judgment.  (Docket Nos. 62-63.)  Plaintiff seeks summary

21 judgment on his claims for breach of contract, deceit, fraud, and negligent

22 misrepresentation and a few specific issues.  Wells Fargo moves for summary judgment

23 on all 13 of Plaintiff's claims.  Additionally, Third-Party Defendant Remy Bickoff has

24 filed a Motion to Dismiss Wells Fargo's Amended Third-Party Complaint.  (Docket No.

25 90.)  All motions have been fully briefed.  For the reasons outlined below, Plaintiff's

26 Motion for Summary Judgment is DENIED, Wells Fargo's Motion for Summary

27 Judgment is GRANTED, and Remy Bickoff's Motion to Dismiss is DENIED as moot.

**BACKGROUND**

The Court provides only a very brief overview of the case as the details are discussed more fully in the Court's analysis of the evidence[1] and claims.  Plaintiff obtained a $ 3,000,000 loan from Wells Fargo for the construction of a home.  The program Plaintiff obtained the loan under, the Construction Perm/Advantage program, provided for a short-term construction loan that would be paid off utilizing permanent financing upon completion of construction.

The construction loan closed in October 2007 and was due in October 2009.  The loan was secured by a deed of trust on the Property.  Plaintiff utilized the construction loan funds in addition to his own funds, although construction took longer than expected and cost more than expected.  All construction funds were disbursed by December 2009, although construction was not complete until February 2010.  Wells Fargo extended the loan maturity date from October 2009 to February 2010, but Plaintiff did not repay the construction loan and, believing he had been guaranteed unconditional permanent financing, he refused to apply for permanent financing through Wells Fargo or any other lender to pay off the construction loan.  Wells Fargo eventually foreclosed on the Property and it was sold almost two years later for one cent more than the amount Plaintiff owed, $3,289,416.83.

**DISCUSSION**

**I.    Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[1] The Court's reference to certain pieces of evidence is not an indication that this is the only pertinent evidence relied on by the Court or considered.  The Court has reviewed and considered all the evidence submitted by the parties.  To the extent not otherwise stated and not inconsistent with this Order, the parties' evidentiary objections are overruled.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  However, the inferences that may be drawn are not limitless.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 632 (9th Cir. 1987).  Inferences must be based on specific facts and only "rational and reasonable" inferences may be drawn.  *Id.*; *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).  "[W]hen the parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

A moving party bears the initial burden of showing there are no genuine issues of material fact.  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citing *T.W. Elec. Serv., Inc.*, 809 F.2d at 630).  The moving party can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  The burden then shifts to the non-moving party to show that there is a genuine issue for trial.  *Horphag Research Ltd.*, 475 F.3d at 1035.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact; there must be evidence on which the jury could reasonably find for the non-moving party.  *Id.* at 252.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

1   determination of every action.'"  *Celotex Corp.*, 477 U.S. 327 (quoting Fed. R. Civ. P. 1).

2          The critical issue in this case is whether Plaintiff was guaranteed permanent

3   financing.  Despite Plaintiff's new approach to some of his claims that varies from the

4   operative pleading, the case still largely turns on this issue.  As outlined in greater detail

5   below, there is little evidence that Wells Fargo guaranteed Plaintiff permanent financing

6   following his construction loan.

7   **II.    Permanent Financing**

8          In moving for summary judgment, Plaintiff asks the Court to look at the totality of

9   the loan documents and communications between the parties to reach two conclusions.

10  First, that Plaintiff's underlying construction loan agreement ("CLA") guaranteed

11  permanent financing following his construction loan.  Second, that Wells Fargo misled

12  him into believing he would be guaranteed permanent financing following his

13  construction loan and then denied it when the construction loan was due.  Considering all

14  the evidence produced, the most the Court can infer is that the loan program under which

15  Plaintiff received his construction loan was designed to provide permanent financing

16  following a construction loan, but it was not guaranteed.

17         **A.    Information Packet[2]**

18         The Information Packet on the Construction Perm/Advantage Program ("the

19  Program") provides general information on how the Program works.  (Wells Fargo's

20  Mot. for Summary J. ("WF MSJ"), Decl. of Cheryl Stewart ("Stewart Decl."), Ex. A,

21  Construction Perm/Advantage Information Packet ("Info. Packet").)  Borrowers obtain a

22  12-month construction loan, or in exceptional cases longer, and then pay off the

23  construction loan with permanent financing.  (Info. Packet at 5.)  It specifically states in

24

25  _____

26  [2] Although the Court agrees with both parties that neither party was contractually bound
    by its terms it does shed light on how the Program generally worked — it was designed
27  to provide a construction loan followed by permanent financing that would pay off the
    construction loan.

1   bold text that a "permanent loan commitment is valid for 12 months from the

2   construction loan closing date." (*Id.*)  Beyond 12 months, borrowers were required to

3   requalify for the permanent loan through Wells Fargo. (*Id.*)

4       **B.     May 25, 2007 Commitment Letter[3]**

5       The Commitment Letter includes terms for permanent financing. (Stewart Decl.,

6   Ex. E, Conventional Commitment Letter ("Commitment Letter").)  Like the Information

7   Packet, it also reflects that the Program was designed to provide permanent financing.

8   However, it also makes clear that permanent financing is not guaranteed or unconditional.

9   It indicates that the credit documents are only valid for 12 months and, in addition to

10  many other caveats, it specifically states "your final approval is not guaranteed and the

11  Lender may require additional information and review." (*Id.*)  It goes on to warn that

12  "[t]his commitment is also subject to reconsideration if there is any material change in

13  your financial status." (*Id.*)  The conditions specific to Plaintiff include $2,232,448 in

14  liquid assets and updated income, credit and asset information with no material changes.

15  (*Id.*)  Plaintiff could not have reasonably relied on this as a basis for permanent financing,

16  certainly not beyond 12 months.  It indicates Plaintiff was only credit approved for a

17  limited time and obtaining permanent financing was subject to numerous conditions.

18      **C.     Program Disclosure**

19      The Construction/Perm Advantage Program Disclosure Plaintiff signed provides

20  disclosures related to this specific loan product and primarily warns the borrower about

---

[3] The parties now seem to agree that the Commitment Letter was not a binding agreement between them, although both have relied on it during this litigation.  Plaintiff objects that it expired before it was signed to argue it is unenforceable, but asks the Court to rely on it as proof Plaintiff was guaranteed permanent financing.  Essentially, Plaintiff objects to the Court considering the Commitment Letter if it favors Wells Fargo, but Plaintiff wants to rely on it to support his position that he believed permanent financing was guaranteed. The Court is not considering the Commitment Letter as a final binding contract that either party breached, but it is evidence that tends to show that permanent financing was not guaranteed.

conditions to access construction funds.  (Pl.'s Mot. for Summary J. ("Pl.'s MSJ"), Decl. of Bruce Bickoff ("Pl.'s Decl."), Ex. LL ("Disclosure").)  Plaintiff emphasizes that the Disclosure refers to the construction loan as an "interim" loan to suggest permanent financing was guaranteed.  While the disclosure does refer to the construction loan as both the construction loan and the interim loan, it also reflects that permanent financing was not guaranteed.  In the only place it references permanent financing, it is not described as a guarantee.  It states, "In the event your loan *is not modified to a permanent loan* or paid off by the maturity date . . . an extension fee . . . will be charged for every 90-day extension."  (*Id.* (emphasis added).)  It is not reasonable to rely on this document as a guarantee of permanent financing when the only reference to it suggests there may be no permanent financing.

## D.   Loan Closing Instructions & Good Faith Estimates

The loan closing instructions provided by Wells Fargo to Chicago Title, Plaintiff's closing agent, for Plaintiff's construction loan closing included two documents: Notification of Construction Loan Closing ("Loan Closing Instructions") and Supplemental Loan Closing Instructions ("Supp. Instructions").  (Stewart Decl., Ex. I, Loan Closing Inst., Ex. J, Supp. Inst.)  Plaintiff argues these documents establish he was guaranteed permanent financing.  The Court disagrees.

The loan closing instructions noted that upon completion of the home, there would be a second closing with an approximately 20-page Modification Agreement to be executed and recorded, additional documents would have to be signed, and interest on the modified loan collected.  (Loan Closing Inst.)  The Supplement similarly notes to expect a later modification.   Although Plaintiff accurately notes that the construction loan is referred to as "interim" numerous times, there is nothing that suggests Plaintiff was guaranteed permanent financing.  The numerous conditions within the instructions, including completion of the home, completion of improvements, an additional Modification Agreement to be executed and recorded, and collection of interest on the

modified mortgage make clear that nothing was guaranteed or automatic. Additionally, these instructions were given to Chicago Title. Plaintiff could not have relied on them to conclude he was entitled to permanent financing.

Plaintiff also received good faith estimates ("GFEs") for his construction loan and a permanent loan. He received one for each because he had applied for both the construction loan and permanent financing at the same time. He also points to emails from Mark Ostrom, Plaintiff's loan originator, and Ostrom's assistant that indicate he has received disclosures for two loans because one is for the construction loan and the other is for permanent financing. (Pl.'s Decl. ¶¶ 17-19, Exs. M, N, O.) Plaintiff received a GFE for each loan he applied for, construction and permanent, because Wells Fargo was required to provide a GFE for each within three days of receiving his applications. However, even if the disclosures were not required, the Court cannot infer that Plaintiff was guaranteed permanent financing because he received this notice. Wells Fargo was not obligated to indefinitely provide unconditional permanent financing based on a notice. It would be unreasonable for Plaintiff to rely on this estimate of the cost of financing as a guarantee of permanent financing.

**E.    Construction Loan Agreement**

**1.    Lost CLA**

Plaintiff's CLA is lost. Plaintiff does not have a copy of it.[4] Wells Fargo does not have a copy of it. Plaintiff asks the Court to draw an adverse inference against Wells Fargo — that the CLA guaranteed permanent financing — because Wells Fargo does not have a copy. Wells Fargo asks the Court to rely on an exemplar CLA that does not

---

[4] Plaintiff does not dispute that he should have obtained a copy of his CLA from his closing agent, Chicago Title. The record reflects that Plaintiff attempted to get it from Chicago Title, but he appears to have abandoned that effort when Chicago Title suggested he get it from Wells Fargo. Chicago Title does not have it. (Pl.'s MSJ, Decl. of Anna Greenstin ("Greenstin Decl."), Ex. F, Decl. of Custodian of Records, Chicago Title.)

contain any guarantee of permanent financing.  Plaintiff is not entitled to an adverse inference and the Court finds the exemplar CLA admissible.  However, as more fully explained below, even without the exemplar CLA, Plaintiff's claims could still not succeed.

### a)   Adverse Inference

The Court will not draw an adverse inference that the lost CLA contained a guarantee of permanent financing.  "'Spoliation' is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"  *Reeves v. MV Transp., Inc.*, 186 Cal. App. 4th 666, 681 (1st Dist. 2010) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2nd Cir. 2001)).  Spoliation or destruction of relevant evidence "can support an inference that the evidence would have been unfavorable to the party responsible for its destruction" if the party having control over the evidence was obligated to preserve it at the time it was destroyed.  *Id.* (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2nd Cir. 1998) and *Cedars-Sinai Med. Ctr. v. Superior Court*, 18 Cal. 4th 1, 11 (1998)).  The party seeking the inference must show "the records were destroyed with a culpable state of mind," and the destroyed evidence is relevant.  *Id.* at 681-82 (citing *Byrnie*, 243 F.3d at 109).  However, "[w]hen relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected."  *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002).

Here, assuming that losing the CLA is comparable to destruction and that Wells Fargo was obligated to preserve it at the time it was lost,[5] there is still no evidence Wells

---

[5] Plaintiff's own position on when the CLA was lost suggests that Wells Fargo would not have known it was obligated to preserve the CLA for purposes of litigation at the time it was lost.  In addressing other issues, Plaintiff argues that the CLA was lost prior to April 20, 2010 and Wells Fargo would not have anticipated litigation until June 8, 2010 (Pl.'s MSJ at 12-13.)  Plaintiff additionally argues that Wells Fargo was obligated to maintain

Fargo knowingly or intentionally lost it.[6]  Plaintiff relies on Wells Fargo's regular practice of creating loan documents electronically and scanning them after closing, but the Court cannot reasonably infer that Wells Fargo knowingly destroyed the CLA because Wells Fargo's regular practice did not work in this instance.  To do so would mean any time a business implements protocols to maintain documents and those protocols fall short, the opposing party could rewrite the contract to his advantage.  Additionally, as discussed more fully above and below, there is no evidence the CLA contained a guarantee of permanent financing.  The Court is not persuaded it should draw an adverse inference that the CLA contained terms for a $3,000,000 loan when the other evidence produced does not support that inference.  *Chappell-Johnson v. Bair*, 574 F. Supp. 2d 87, 102 (D. D.C. 2008) (citing *Kronisch*, 150 F.3d at 128) ("The destruction of evidence, standing alone, it not enough to allow a party who has produced no evidence – or utterly inadequate evidence – in support of a given claim to survive summary judgment on that claim.")  Plaintiff is not entitled to a presumption that the CLA contained terms guaranteeing him permanent financing.[7]

---

the CLA under 12 C.F.R. § 202.12(b)(2)(i)(ii).  The Court is not convinced it applies because the adverse action that triggers it is defined to exclude actions based on default, as occurred here.  § 202.2.

[6] Plaintiff's assertion that Ostrom had a copy of the CLA, but intentionally did not produce it lacks any evidentiary support.  The deposition testimony Plaintiff cites generally references Ostrom having "any documents related to" Plaintiff's construction loan, previously described as "various forms, appraisal, credit reports, etc."  (Dep. of Mark Ostrom ("Ostrom Dep.") 64:2-65:5.)  The Court is not persuaded that it should infer from this testimony that Ostrom withheld Plaintiff's CLA, particularly when it appears Plaintiff elected not to simply ask Ostrom if he had a copy of Plaintiff's CLA.

[7] In numerous places in Plaintiff's brief, he argues he is entitled to an adverse inference or seeks sanctions against Wells Fargo for losing his CLA.  However, as noted above, there is no evidence the CLA was knowingly or intentionally lost, and certainly no indicator of bad faith.  Additionally, Plaintiff has not identified a point in this litigation when Wells Fargo was required to, but did not produce, the CLA before the deadline when it indicated it was lost.  Sanctions are not warranted.

Plaintiff additionally argues that the CLA should be interpreted to contain a guarantee of permanent financing under California Civil Code § 1654.[8] Under § 1654 "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist, when uncertainty cannot be removed by other rules of contract interpretation." California courts, however, 'will not adopt a strained or absurd interpretation in order to create an ambiguity where none exist.'" *Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 560 (9th Cir. 1991) (quoting *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982)). There is no evidence supporting an interpretation that guarantees permanent financing. It would not make sense to base the ambiguity on this wholly unsupported possibility and then interpret it that way when other evidence does not support it. Other rules of contract interpretation Plaintiff relies on also would not support permanent financing.

### b) Exemplar CLA

Wells Fargo has submitted an exemplar CLA. (Stewart Decl. ¶ 34, Ex. K. ("Exemplar CLA").[9]) The Court finds the exemplar CLA is admissible.[10] "When a proponent cannot produce original evidence of a fact because of the inadvertent loss of the evidence, proof by secondary evidence is permissible." *Med. Lab. Mgmt.*

---

[8] Plaintiff does not cite any authority for relying on § 1654 when a contract has been lost.
[9] The Court **DENIES** Wells Fargo's ex parte motion for in-camera review of a *completely* unredacted version of the exemplar CLA. (Docket No. 76.) The Court does not need to review the document completely unredacted because it is clear from the minimally redacted version attached to the ex parte motion that the only information redacted is the personal information of that borrower. It reflects the relevant property was in California, same as Plaintiff, and that the exemplar CLA was governed by the laws of California, same as Plaintiff. This adequately addresses the concern that the CLA originated in a different state. Combined with Stewart's declaration in support, this is sufficient.
[10] The Court overrules Plaintiff's objections to the exemplar CLA. It is not lacking addendums or from a different state as Plaintiff claims. Plaintiff's own addendums have been produced and the exemplar CLA is from California as was Plaintiff's. The Court declines to speculate that Plaintiff's CLA, unlike any other CLA under the Program, contained some other addendums.

*Consultants*, 306 F.3d at 825 (citing Fed. R. Evid. 1004).  Federal Rule of Evidence 1004(a) allows for the admission of evidence of the content of a writing if "all the originals are lost or destroyed, and not by the proponent acting in bad faith."  As previously noted, there is no evidence of bad faith.

During 2007 and 2008, the Program used a standard-form CLA that varied only as to borrower name, location of residence, property address, name of contractor, loan amount, maximum amount of disbursements, and the relevant state law that would govern.  (Stewart Decl. ¶ 34.)[11]  The only separate addendums were the borrower's construction budget and disbursement schedule.  (*Id.*)[12]  Plaintiff's budget and disbursement schedule addendums have been provided.  (Stewart Decl., Exs. M & O.)  Although, Plaintiff recalls his CLA referencing permanent financing in some way, the Court will not exclude the exemplar on that basis.

### 2.    No Guarantee of Permanent Financing in CLA

The exemplar CLA makes clear that Plaintiff's CLA did not contain any guarantee of permanent financing.  However, as noted in the Court's analysis of Plaintiff's claims throughout this Order, even if the Court did not consider the exemplar, the Court still could not infer that Plaintiff's CLA contained a guarantee of permanent financing.  Plaintiff has produced some evidence, his own declaration and deposition testimony, that his CLA referenced permanent financing.  Plaintiff indicates in his declaration that when

---

[11] Plaintiff asks the Court to sanction Wells Fargo for failing to produce a competent person most knowledgeable concerning Plaintiff's CLA and his loan documents.  Plaintiff's support for its position is based on isolated portions of Stewart's testimony viewed out of context.

[12] Plaintiff asserts that Stewart testified that Plaintiff's CLA could have had other terms, but this is not accurate.  Stewart indicated that she never saw a CLA with special terms.  (Stewart Dep. 206:18-20.)  She is then asked whether it was possible for Wells Fargo to have a special CLA, to which she responds "anything is possible."  (*Id.* at 206:21-24.)  This is the testimony Plaintiff cites.  However, Stewart then reiterates that based on her experience she does not recall there being anything other than the standard loan agreement.  (*Id.* at 206:25-207:6.)

he signed his CLA, he confirmed that the terms in his contract "*referenced* a permanent loan." (Pl.'s Decl. ¶¶ 37, 40 (emphasis added).)  During his deposition, he also references "certain terms" in his CLA representing rollover financing.  (Pl.'s Dep. 84:20-85:1.)  However, this could still only give rise to an inference that permanent financing was referred to in the CLA.  Although inferences must be drawn in Plaintiff's favor, inferences must be rational, reasonable, and based on specific facts.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 632.  It would be unreasonable to infer a contract indefinitely guarantees unconditional permanent financing based only on testimony that the contract "referenced" permanent financing.  Even if the Court disregarded the exemplar and inferred that the CLA contained some commitment as to permanent financing, itself an unreasonable inference to draw, there is no evidence to support the commitment being unconditional.  Like numerous other documents submitted in support of both parties' motions illustrate, documents can reference permanent financing without guaranteeing it.

Taking into account all the evidence in the record, the Court cannot find Plaintiff was guaranteed permanent financing under the CLA.  The exemplar CLA does not provide for permanent financing.  And, even if the Court rejected the exemplar CLA, and looked at all the other evidence produced, there is no evidence from which the Court can infer Plaintiff was guaranteed permanent financing.

### F.    Communications Between Plaintiff and Wells Fargo

Plaintiff relies on numerous emails between himself and employees of Wells Fargo to try to establish he was led to believe he would receive permanent financing following his construction loan.  Plaintiff also relies on his own recollections of Ostrom's assurances about receiving permanent financing and an alleged comment he recalls Ostrom making in 2011 about permanent financing being hypothetical.[13]  Like the emails noted above regarding the GFEs, there are emails that refer to permanent financing and

---

[13] Plaintiff cites ¶ 70 of his Declaration, but his Declaration does not include a ¶ 70.

1   the Court does not doubt that Plaintiff discussed permanent financing with Ostrom,
2   however, like the documents discussed above, a reference to permanent financing is not a
3   guarantee of it.

4          The Court will not go through all the communications, but like the documents
5   noted above, it evidences only that the Program was designed to provide permanent
6   financing, not that Plaintiff was guaranteed permanent financing.  For example, Plaintiff
7   sent an email to Jeanne Otten, who was handling construction loan disbursements, in
8   which *he states* he has been assured by Ostrom that he is approved for permanent
9   financing.  (Pl.'s MSJ, Ex. PP.)  The email is also about draws for funds and he indicates
10  how he will proceed on draws and inspections for work.  (*Id.*)  She responds
11  "Wonderful!"  (*Id.*)  This is not evidence *Wells Fargo* guaranteed permanent financing.
12  Another communication, relied on by Wells Fargo, also references permanent financing
13  and communications with Ostrom.  It too is not a guarantee.  A letter written by
14  Plaintiff's former counsel and wife, Jaime Stewart, with Plaintiff's approval, reflects
15  permanent financing was anticipated, but not guaranteed.  (Pl.'s Dep. 112:16-25, Ex. 16
16  ("Steward Letter").)  It states "Mr. Ostrom made it very clear to Mr. Bickoff that in order
17  for Mr. Bickoff to convert the loan, Mr. Bickoff would have to have substantial monies
18  on deposit and available."  (*Id.*)  It goes on to acknowledge Plaintiff may lack funds "to
19  enable him to convert the construction loan to a standard home loan."  (*Id.*)  This goes to
20  two points.  First, it is consistent with the other correspondence in that permanent
21  financing is referenced, but not guaranteed.  Second, the reference to Ostrom making a
22  condition "very clear," reflects that Ostrom's assurances as to permanent financing were
23  not a guarantee.  This is consistent with Ostrom's testimony that he always made clear to
24  borrowers, including Plaintiff, that requalification would be necessary if the construction
25  was not complete in 12 months.  (Ostrom Dep. 216:1-23.)

26         Plaintiff points to the absence of a written disclosure that he would have to
27  requalify in 12 months and claims that Ostrom told him he was preapproved for a

1   construction loan and rollover financing.  (Pl.'s Dep. 29: 21-24.)  He was credit approved
2   for 12 months as evidenced by the Commitment Letter and consistent with Ostrom's
3   testimony.  (Ostrom Dep. 192:24-193:15.)  But that is not a guarantee he would
4   unconditionally receive permanent financing indefinitely regardless of how long
5   construction took or how his financial situation changed.

6       The Court finds Plaintiff has not produced evidence from which the Court can
7   rationally and reasonably infer he was guaranteed permanent financing.  *T.W. Elec. Serv.,*
8   *Inc.*, 809 F.2d at 632.

9   **III.   Claims**[14]

10      **A.   Contract Claims**

11      Wells Fargo moves for summary judgment on Plaintiff's claims for breach of
12  written contract, breach of implied covenant of good faith and fair dealing, and breach of
13  loan commitment.  Plaintiff moves for summary judgment on his claim for breach of
14  written contract.

15              **1.   Breach of Contract**

16      "The standard elements of a claim for breach of contract are (1) the contract, (2)
17  plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)
18  damage to plaintiff therefrom."  *Abdelhamid v. Fire Ins. Exchange*, 182 Cal. App. 4th
19  990, 999 (3rd Dist. 2010).  Because none of the elements are met, Wells Fargo is entitled
20  to summary judgment on this claim.

21  ///

22  ///

23  _____

24  [14] In addressing claims only Wells Fargo moves for summary judgment on, the Court
25  only analyzes the elements Wells Fargo raised because those are the only issues upon
    which Wells Fargo could shift the burden to Plaintiff to make a showing.  *See Celotex*
26  *Corp.*, 477 U.S. at 331; *see also Horphag Research Ltd.*, 475 F.3d at 1035.  It is not
27  intended to imply that Plaintiff has produced evidence supporting other elements of his
    claims.

### a)   Plaintiff's Motion

Plaintiff moves for summary judgment on his claim for breach of contract based on breaches of the Deed of Trust (Greenstin Decl. ¶ 14, Ex. HH ("Deed of Trust").). Plaintiff asserts that Wells Fargo breached the Deed of Trust in two ways: (1) failing to provide Plaintiff with a "copy of the Note and this Security Instrument" and (2) not complying with "applicable law."[15]

### (1)   Paragraph 17 of the Deed

The first basis for Plaintiff's breach of contract claims is premised on paragraph 17 of the Deed of Trust, "Borrower shall be given a copy of the Note and this Security Instrument." (Deed of Trust at 10.)  Plaintiff alleges Wells Fargo breached the Deed of Trust by not providing Plaintiff with a copy of his CLA.  Not providing the CLA was not a breach of the Deed of Trust, because the Deed of Trust does not require Wells Fargo to provide Plaintiff with a copy of the CLA.  As to provision of the Note and Deed of Trust, Wells Fargo has produced undisputed evidence that Wells Fargo did provide a copy of the Note and Deed of Trust, no later than October of 2011, well before the foreclosure sale.

### (2)   Applicable Law

Plaintiff argues that Wells Fargo breached paragraphs 16 and 22 of the Deed of Trust by failing to comply with "applicable law."  It appears that Plaintiff is arguing violations based on the following: violation of California Civil Code § 2924, slander of title, violation of federal local rules, and improperly focusing on the Commitment Letter.[16]

---

[15] Neither of these theories of liability for breach of contract is plead in the Fourth Amended Complaint ("4AC") and Wells Fargo would not have had notice of such a claim.  As discussed at the conclusion of this Order, this is itself a basis for granting Wells Fargo's Motion.

[16] The Court is not convinced that this is not just a creative way to pursue claims not previously asserted.  Despite these reservations about the propriety of pursing civil code

### (a)     California Civil Code § 2924

Plaintiff asserts that Wells Fargo violated § 2924 in violation of "applicable law" in breach of the Deed of Trust.  The two notices of default issued to Plaintiff reference the CLA, but the CLA was not provided to Plaintiff.  Plaintiff alleges this violated § 2924 because, without the CLA terms, Wells Fargo's notices failed to advise Plaintiff what was needed to cure the alleged default.  Section 2924 "is sufficiently complied with if the notice of default contains a correct statement of some breach or breaches sufficiently substantial in their nature to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure." *Little v. Harbor Pac. Mortg. Investors*, 175 Cal. App. 3d 717, 720 (4th Dist. 1985) (quoting *Birkhofer v. Krumm*, 27 Cal. App. 2d 513, 523-24 (4th Dist. 1938)).[17]  Plaintiff cites no authority that would require Wells Fargo to attach or provide a copy of the CLA with a notice of default to comply with the statute.[18]  Both notices of default advised Plaintiff that the Property was in foreclosure under the election to sell in the Deed of Trust because Plaintiff was behind in his payments.  (Pl.'s Req. for Judicial Not. ("RJN"), Ex. 2 (Sept. 22, 2010 NOD), Ex. 3 (April 1, 2011 NOD).)  This identifies his substantial breach.  Both indicate when the balance was originally due, when the due date was extended to, and the amount Plaintiff had to pay to cure the

_____

violations and slander of title as a basis for breaches of a contract, the Court addresses the arguments substantively.

[17] Under a separate section of his Motion, Plaintiff cites § 2924.17 without any explanation.  To the extent Plaintiff is attempting to argue § 2924.17 required Wells Fargo to include a copy of Plaintiff's CLA with the notices of default, the Court disagrees.  Section 2924.17 requires "a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence." § 2924.17(a).  It additionally requires review of "competent and reliable evidence to substantiate the borrower's default . . ., including the borrower's loan status and loan information." § 2924.17(b).  Based on the undisputed evidence before the Court, there is no evidence of a violation of § 2924.17.

[18] Such a requirement would be surprising given possession of the note is not even "a precondition to non-judicial foreclosure under a Deed of Trust." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010 (collecting cases)).

1  default.  This was sufficient to advise Plaintiff what he needed to do to cure his default.

2       Plaintiff additionally argues Wells Fargo breached the Deed of Trust by violating

3  § 2924 by not maintaining the CLA while foreclosing based, in part, on the terms of it.

4  This argument is premised on Plaintiff being entitled to permanent financing under the

5  terms of the lost CLA.  Essentially, that if Wells Fargo had not lost the CLA and had

6  provided it to Plaintiff, he would have known that he was entitled to permanent financing.

7  However, as discussed above, there is no evidence from which the Court can infer

8  Plaintiff was guaranteed permanent financing.  Additionally, as noted above, Plaintiff

9  cites no cases requiring provision of an underlying contract to proceed with foreclosure.

10      Additionally, as more fully discussed later, a lender is protected by the § 2924(d)

11 privilege in foreclosure filings absent a showing of malice.  *Kachlon v. Markowitz*, 168

12 Cal. App. 4th 316, 343 (2nd Dist. 2008).  Plaintiff has produced no evidence of malice by

13 Wells Fargo in recording either default notice.  The loan was due.  It was not paid.

14 Plaintiff declined to apply for permanent financing with Wells Fargo or any other lender.

15 Wells Fargo foreclosed.  This does not evidence malice.

16              **(b)     Filings with this Court**

17      Plaintiff also argues that Wells Fargo misled the Court into not enjoining the

18 foreclosure sale.  It appears that Plaintiff is arguing that this was a breach of the Deed of

19 Trust's requirement that Wells Fargo comply with applicable law.  Plaintiff asserts that

20 the Custodian's Declaration filed in opposition to Plaintiff's Motion for a preliminary

21 injunction to stop the foreclosure sale was misleading because it did not include a copy of

22 Plaintiff's CLA.  Plaintiff asserts, without any authority, that filing a declaration that only

23 included portions of the loan file is the equivalent of filing a false declaration.  The Court

24 has reviewed the Declaration and finds there is no evidence of a false statement.  The

25 Declaration does note a loan file is maintained and then attaches the Note and Deed of

26 Trust as exhibits.  Plaintiff has not cited any authority requiring Wells Fargo, in opposing

27 a request for a preliminary injunction, to include the entire loan file or the CLA in

particular.  Additionally, the CLA's inclusion could only be significant if it contained a guarantee of permanent financing.  The Court has found Plaintiff has failed to produce any evidence that was the case.

### (c)    Slander of Title

Plaintiff additionally asserts that Wells Fargo breached the Deed of Trust by committing slander of title (violating applicable law) by recording the first notice of default.  "The elements of a cause of action for slander of title are '(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.'"  *Alpha and Omega Dev., LP v. Whillock Contracting, Inc.*, 200 Cal. App. 4th 656, 664 (4th Dist. 2011) (quoting *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2nd Dist. 2009)).

If the Court assumes that the first notice of default, rescinded shortly thereafter, was false because it mistakenly indicated the Property was unoccupied, there is no evidence it caused direct and immediate pecuniary loss.  Any harm was cut off by its rescission.  Additionally, it was privileged.  As noted above, the recording of a notice of default is privileged absent evidence of malice and the privilege immunizes a defendant from a slander of title claim.  *Carswell v. JP Morgan Chase Bank N.A.*, 500 F. Appx. 580, 582-83 (9th Cir. Nov. 21, 2012) (citing *Kachlon*, 168 Cal. App. 4th at 333).

### (d)    Local Rules and Commitment Letter

Plaintiff's assertions that Wells Fargo violated applicable law by violating federal local rules and improperly focusing on the Commitment Letter have no merit.[19]  Both of these arguments are premised on Wells Fargo being required to include Plaintiff's CLA to take any action on his failure to pay the amounts owed.  As discussed above, the

---

[19] Plaintiff cited the local rules for the Central District of California that describe the proper form of notice for a motion and require the moving party to include the evidence the moving party relies on in the motion.  Although Plaintiff's position on the application of these rules is not clear, as explained above, Wells Fargo did not file a false or misleading declaration in seeking to proceed with the foreclosure.

declarations filed by Wells Fargo in foreclosing, here in seeking to proceed with the sale of the Property, and in the notices of default, were not false because they lacked the CLA.

Plaintiff's Motion is denied as to the breach of contract claim because Plaintiff has not produced evidence Wells Fargo breached any obligation to Plaintiff.[20]   The claim additionally fails for the reasons discussed below in addressing Wells Fargo's Motion for Summary Judgment on the breach of contract claim.

### b)   Wells Fargo's Motion

Wells Fargo's Motion addressed Plaintiff's breach of contract, breach of loan commitment, and breach of the covenant of good faith and fair dealing claims based on the allegations of the 4AC.  Although the Court has already addressed the breach of contract claim as now asserted by Plaintiff, the Court also addresses Wells Fargo's Motion and finds it is entitled to summary judgment.

### (1)   No Breach by Wells Fargo

A contact claim premised on the breach of a written agreement for permanent financing fails because there is no evidence of a written agreement that guaranteed permanent financing.  As discussed above, the correspondence between the parties also does not reflect any guarantee of permanent financing.  And, even if the Court assumed there were representations guaranteeing permanent financing, that evidence would be barred by the parol evidence rule.  The parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the

---

[20] Plaintiff argues that Wells Fargo's sale of the Property also violated the statute of frauds because the Deed of Trust was incomplete without the CLA.  It is not clear from the briefing how Plaintiff believes the statute of frauds was violated.  However, it appears the argument is similar to Plaintiff's claim, rejected above, that Wells Fargo could not take any action in response to Plaintiff's default without the lost CLA.  To the extent Plaintiff is arguing the Deed of Trust is incomplete because the CLA guaranteed permanent financing, the argument fails.  As discussed above, the exemplar CLA lacks any such terms.  Additionally, even without considering the exemplar, there is no evidence the CLA contained a guarantee of permanent financing.

terms of an integrated written instrument." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004) (citing *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1433 (1st Dist.1992)).  Extrinsic evidence is only allowed "to explain the meaning of a written contract ... [if] the meaning urged is one to which the written contract terms are reasonably susceptible." *Id.* (citing *BMW of N. Am., Inc. v. New Motor Vehicle Bd.* 162 Cal. App. 3d 980, 990 n.4 (3rd Dist. 1984)).  There are no terms reasonably susceptible to being construed as a guarantee of permanent financing.  Assuming there was extrinsic evidence of some guarantee, finding that to be an enforceable contract term would go far beyond simply explaining the meaning of a written contract.  It would constitute manufacturing, through speculation, a new contract guaranteeing permanent financing.

### (2)    Plaintiff's Nonperformance

The Court only briefly addresses Plaintiff's nonperformance of his obligations to Wells Fargo because Plaintiff's breach of contract claim fails on other elements.  Plaintiff failed to repay the construction loan by the extended deadline.  Even if this breach were excused had Plaintiff produced evidence of a guarantee of permanent financing that Wells Fargo did not honor, there are other breaches.  Plaintiff failed to maintain hazard insurance on the Property.  Plaintiff has produced evidence he maintained insurance on the property from February 25, 2008 to February 25, 2009 and March 13, 2009 to March 13, 2010.  (Pl.'s Decl. ¶ 53, Ex. SS.)  But he has produced no evidence he otherwise maintained insurance on the Property.  Additionally, Plaintiff was prohibited from moving into the house until the construction loan was paid in full (absent a written agreement otherwise between Plaintiff, Wells Fargo, and the builder).  (Disclosure.)  Yet, it is undisputed that Plaintiff moved into the house in 2009 while the construction loan remained unpaid.

### (3)    Damages

The Court also only briefly addresses damages because Plaintiff's breach of contract claim fails on other elements.  The Court finds Plaintiff has not produced non-

speculative evidence of his damages.  The lack of detail is problematic.  Even if the Court assumes Wells Fargo's refusal to provide permanent financing was a breach, the Court cannot identify whether Plaintiff was damaged by that breach.  The Property sold for more than Plaintiff owed Wells Fargo.  There is little support for the asserted damages otherwise.  Plaintiff identifies specific dollar amounts, but how Wells Fargo's alleged breach, assuming that there was a breach, resulted in those damages is not explained.  For example, Plaintiff speculates that he lost equity in the Property.  This is based on the assertion that the fair market value was more than it sold for at the trustee's sale, which is itself based on it being resold at a later time for more.  But this vague allegation is not sufficient given the number of factors that play a role in the value of property and the evidence that the Property required additional investment before it was resold.  As another example, Plaintiff claims home owner's association fees, but it is undisputed that Plaintiff lived in the Property for a period of time.

Significantly, Plaintiff has produced no evidence that he attempted to mitigate his damages.  Wells Fargo produced undisputed evidence that Plaintiff took no steps to mitigate the damages he claims to have suffered from the foreclosure.  He refused Wells Fargo's offers to apply for permanent financing.  (Pl.'s Dep. 133:6-9 & 136:9-12; Exs. 20, 25.)  There is also no evidence he attempted to obtain financing through any other lender.  If he had been denied financing from Wells Fargo or another lender, he would have established that the loss or equity he claims he suffered as a result of foreclosure was unavoidable.  Similarly, he might have avoided the damages he appears to seek almost entirely if he had obtained other financing, even on unfavorable terms.  His damages would be the difference resulting from less favorable loan terms, but everything that he vaguely claims flowed from the foreclosure would have been avoided.

Finally, in addition to other issues already discussed above, Plaintiff failed to produce any evidence Wells Fargo breached its obligation to Plaintiff to make disbursements under the construction loan.  In addition to the reasons previously

1   discussed, summary judgment is granted as to any claim based on construction loan

2   disbursements.

3       Wells Fargo's Motion is granted on Plaintiff's breach of contract claim.

4       **2.    Covenant of Good Faith and Fair Dealing**

5       Wells Fargo moves for summary judgment on Plaintiff's claim for breach of the

6   implied covenant of good faith and fair dealing. "[T]he covenant of good faith and fair

7   dealing, implied by law, in every contract, exists merely to prevent one contracting party

8   from unfairly frustrating the other party's right to receive the *benefits of the agreement*

9   *actually made*." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 348 (2000) (emphasis in

10  original). This claim rests on the proposition that Wells Fargo denied permanent

11  financing when Plaintiff was entitled to it. Because, as discussed above, there is no

12  evidence Plaintiff was entitled to permanent financing, denying it did not unfairly

13  frustrate Plaintiff's right to receive it. Additionally, the evidence of Wells Fargo's efforts

14  to help Plaintiff avoid foreclosure also negate the claim. Wells Fargo suggested Plaintiff

15  apply for permanent financing with Wells Fargo or another lender and delayed the sale to

16  allow Plaintiff additional time to try arrange financing or find a buyer for the Property.

17      To the extent Plaintiff is trying to recover in tort for breach of the covenant, the

18  claim fails because there is no evidence of a special relationship. The extension of a tort

19  remedy for breach of the covenant outside the insurance context is limited to cases where

20  the plaintiff can establish a special relationship. *Careau & Co. v. Sec. Pac. Bus. Credit,*

21  *Inc.*, 222 Cal. App. 3d 1371, 1399 (2nd Dist. 1990). Here, there is evidence of a

22  relationship between Plaintiff and Ostrom, but as discussed more fully below, there is no

23  evidence it was more than that of a lender and borrower. *Id.* at 1400.

24      **3.    Loan Commitment**

25      "'[B]reach of loan commitment' is not a cognizable legal claim." *Clark v.*

26  *Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1043 (E.D. Cal. 2010). However,

27  the Court treats it as a breach of contract claim. *Id.* The claim asserted in the 4AC is

premised on the denial of the permanent financing outlined in the Commitment Letter. (4AC ¶ 115.)  As previously noted, the Commitment Letter was not binding.  To the extent it is based on the denial of permanent financing in the CLA or elsewhere, as the Court has already found, the exemplar CLA does not provide for permanent financing nor is there any evidence from which the Court can infer guaranteed permanent financing. There is no breach in not providing it.  As a contract claim, it also fails on the elements of Plaintiff's performance and resulting damages, as explained above.

Plaintiff's argument on this claim mirrors the basis for the contract claims discussed above that do not succeed.  To the extent Plaintiff is arguing Wells Fargo breached a loan commitment by committing fraud, the claim fails for the reasons discussed below.

**B.    Tort Claims[21]**

Plaintiff moves for summary judgment on his claims for fraud, deceit, and negligent misrepresentation.  Wells Fargo moves for summary judgment on Plaintiff's claims for fraud, deceit, fraud in the inducement, promissory fraud, negligent misrepresentation, concealment, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of unfair competition laws.  In moving for summary judgment, Wells Fargo identified the elements of these claims that Plaintiff would be unable to meet.  The Court primarily analyzes those unmet elements and finds Wells Fargo is entitled to summary judgment on these claims.

_____

[21] Although Plaintiff's tort claims are largely duplicative of his contract claims, itself a basis for granting summary judgment to Wells Fargo, the Court has analyzed the claims. Additionally, the Court finds Plaintiff cannot recover punitive damages.  Plaintiff failed to explain why he would be entitled to punitive damages when Wells Fargo raised it in moving for summary judgment.  Plaintiff waived the right to pursue punitive damages by failing to substantively address the issue.  Additionally, the Court finds no evidence of oppression, fraud, or malice as required for a claim for punitive damages.  Cal. Civ. Code § 3294.

### 1.   Fraud Claims[22]

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court* 12 Cal. 4th 631, 638 (1996) (citing 5 Witkin, Summary of Cal. Law, Torts, § 676, p. 778 (9th ed. 1988) and Civ. Code, § 1709). Promissory fraud is a subspecies of an action for fraud and deceit. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004). "The elements of negligent misrepresentation are the same except for the second element, which for negligent misrepresentation is the defendant made the representation without reasonable ground for believing it to be true." *Id.* (citing *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc.* 196 Cal.App.4th 1559, 1573 (2011)); *see also Badame v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 697136, at *2. Wells Fargo asserts Plaintiff cannot show intent to deceive, reasonable and justifiable reliance, and fails to establish damages.

As to the fraudulent concealment and constructive fraud claims, Wells Fargo additionally raises the absence of a confidential or fiduciary relationship. These claims additionally require the existence of a confidential or fiduciary relationship giving rise to an obligation to disclose the concealed information. *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1199 (2nd Dist. 2011); *Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal. App. 4th 1105, 1131 (2nd Dist. 2014) ("[c]onstructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.")

It appears that Plaintiff's fraud claims are premised not just on misrepresentations that he was guaranteed permanent financing following his construction loan, the basis in the 4AC, but also, similar to the contract claim, some of the filings by Wells Fargo. For

---

[22] As with other claims, these deficiencies in the notices of default were not asserted as a basis for Plaintiff's fraud claims in the 4AC.

1    example, Plaintiff argues that the September 22, 2010 notice of default was fraudulent

2    because it indicated the Property was not owner occupied, the second notice of default

3    was fraudulent because it lacked the CLA, and the Declaration filed in opposing

4    Plaintiff's motion for a preliminary injunction before this Court was an intentional

5    misrepresentation because it referenced the loan file, but did not attach the CLA.

6    Additionally, Plaintiff argues that Wells Fargo delayed foreclosure for its own financial

7    advantage and that Wells Fargo extended the loan deadline to get more time to locate the

8    lost CLA.

9                      **a)      Section 2924(d) Privilege**

10        As to the two notices of default, Wells Fargo accurately asserts Plaintiff cannot

11   succeed on a tort claim based on these filings absent a showing of malice.  "Under

12   California Civil Code § 2924(d), 'the statutorily required mailing, publication, and

13   delivery of notices in nonjudicial foreclosure, and the performance of statutory

14   nonjudicial foreclosure procedures, are privileged communications under the qualified

15   common-interest privilege of section 47, subdivision(c)(1).'"  *Hunt v. Wells Fargo Bank,*

16   *N.A.*, 576 Fed. Appx. 693, 693 (9th Cir. May 29, 2014) (quoting *Kachlon*, 168 Cal. App.

17   4th at 333).  Absent a showing of malice, a defendant is immune.  *Kachlon*, 168 Cal.

18   App. 4th at 333.  Malice is evidenced by "a wanton and reckless disregard of the

19   consequences and of the rights and of the feelings of others."  *Id.* at 344 (quoting *Roemer*

20   *v. Retail Credit Co.*, 3 Cal. App. 3d 368, 371 (1970)).  There is no evidence of malice.

21   The first notice of default was incorrect in indicating that the Property was not owner-

22   occupied.  There is no evidence Wells Fargo even knew this was wrong,[23] let alone acted

23   with wanton and reckless disregard of the consequences.  The argument seems

24   particularly unpersuasive given the primary requirement Wells Fargo avoided by

25   indicating the Property was owner occupied was communicating with Plaintiff about

26   

27   
_____

[23] On the contrary, there is evidence that Plaintiff should not have been living in the Property under the terms of the Disclosure.

1    options to avoid foreclosure, something Wells Fargo was already doing.

2        As to the Declaration filed in Opposition to Plaintiff's request for a preliminary

3    injunction, as previously discussed, the Court finds no false statement in the filing.  The

4    Declaration's reference to the loan file from which the Deed of Trust and Note were

5    produced provides the necessary foundation for these attached documents.  The Court

6    cannot infer the declarant was attempting to mislead the Court about the CLA, it

7    availability, or its contents.

### b)    Intent to Deceive and Justifiable Reliance

9        Even if the Court assumed Wells Fargo made false misrepresentations through

10   these filings or any of its employees' representations, the Court cannot infer from the

11   evidence presented on either theory[24] that Wells Fargo intended to deceive Plaintiff (or as

12   to the negligent misrepresentation claim made it without reasonable ground for believing

13   it to be true).  Nor can the Court find that Plaintiff justifiably relied on a representation or

14   suffered damages as a result.

15       Plaintiff's theory in the 4AC, that Wells Fargo misled Plaintiff into believing he

16   was guaranteed permanent financing cannot succeed.  Even if the Court assumes Ostrom

17   represented that Plaintiff would receive permanent financing following his construction

18   loan without any additional approvals, contrary to the evidence in the record, there is no

19   evidence Ostrom intended to deceive him or represented he would receive permanent

20   financing without a reasonable ground for believing it to be true.  Plaintiff, a successful

21   businessman with significant monies available had been credit approved for permanent

22   financing.  If Ostrom did represent that Plaintiff would receive permanent financing, he

23   had a reasonable basis for thinking Plaintiff would qualify.  Plaintiff also could not have

24   reasonably relied on a representation that he was guaranteed permanent financing

---

26   [24] For ease of analysis, the Court has grouped Plaintiff's theories of liability by
27   misrepresentations made in the process of obtaining the construction loan and those made
     after Plaintiff closed on the construction loan.

1   because, as discussed at length above, every document he received related to this

2   construction loan, including the Commitment Letter, contained language that was

3   conditional.  And, the exemplar CLA does not provide for permanent financing.  Plaintiff

4   could not have reasonably relied on any Ostrom representation he was guaranteed

5   permanent financing.

6          As to Plaintiff's theory that Wells Fargo delayed foreclosure so that Plaintiff would

7   complete construction with his own funds and clear the way with the home owner's

8   association, the Court cannot draw that inference based on the evidence presented.

9   Plaintiff relies on the extension of the due date of the loan and an email (primarily about

10  the status of the construction loan) that included a single question about a recent hearing

11  with the home owner's association.  There is evidence Plaintiff spent his own funds on

12  construction, but the record reflects that was, to some extent, expected at the outset.  His

13  use of his own funds and a single email is not enough to support an inference Wells

14  Fargo plotted to get him to spend more and conclude matters with the home owner's

15  association.  This is a particularly hard inference to draw when Wells Fargo waited

16  almost two years beyond the extended due date to actually proceed to a trustee's sale.

17  The same is true of the theory that the delay was intended to allow more time to find the

18  CLA.  There is no evidence that Wells Fargo's delay had anything to do with the CLA.

19                  c)      **Damages**

20         As previously discussed, Plaintiff has not produced non-speculative evidence of his

21  damages and there is undisputed evidence of his failure to mitigate his damages.  The

22  same is true of establishing damages for the fraud claims.  The Court only notes

23  additionally, that Plaintiff has not explained how Plaintiff suffered damages from Wells

24  Fargo's delay in foreclosing.

25  ///

26  ///

27  ///

14CV1065 BEN (WVG)

#### d)   Absence of Confidential or Fiduciary Relationship[25]

Wells Fargo moves for summary judgment on Plaintiff's claims for constructive fraud and concealment because both require a fiduciary or confidential relationship. Plaintiff argues that Plaintiff had a confidential or fiduciary relationship with Ostrom. However, Plaintiff has presented no evidence his relationship with Ostrom was anything more than that of a borrower and lender.  Plaintiff has produced evidence that Ostrom provided Plaintiff with guidance in securing a loan prior to the construction loan to essentially build a relationship with Wells Fargo. Otherwise, it is only Plaintiff providing his financial information, Ostrom providing information on qualifying, and emailing about budgets, required builder paperwork, appraisals, and the loan documents.  There is no guidance beyond qualifying for the loan, the terms of the loan, and accessing funds from the loan.  This is not the type of detailed guidance as to how to operate a business, as in *Barrett v. Bank of America*, which might give rise to a confidential or fiduciary relationship.  183 Cal. App. 3d 1362, 1369 (4th Dist. 1986).  There is nothing beyond the conventional role of a lender.  *Ragland v. U.S. Banking Nat'l Ass'n*, 209 Cal. App. 4th 182, 206 (4th Dist. 2012); *see also Hunt*, 576 Fed. Appx. at 694.

The Court grants summary judgment to Wells Fargo on Plaintiff's claims for deceit, fraud, promissory fraud, negligent misrepresentation, concealment, and constructive fraud.  Plaintiff is denied summary judgment on his claims for fraud, deceit, and negligent misrepresentation.

///

---

[25] The Court asked the parties to file supplemental briefs on the impact of a recent California Appellate Court decision, *Daniels v. Select Portfolio Servicing, Inc.*, 2016 WL 1688595, *15 (6th Dist. 2016).  The Court agrees with Wells Fargo that *Daniels* should not be applied here.  *Daniels* analyzes a lender's duty of care for a negligence claim. (*Id.*)  Wells Fargo does move for summary judgment on Plaintiff's claim for negligent infliction of emotional distress, a type of negligence claim, but its supplemental brief clarifies that Wells Fargo did not move for summary judgment on the duty element of that claim.

## 2.   Emotional Distress Claims

Wells Fargo moves for summary judgment on Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

The elements of a claim for intentional infliction of emotional distress are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1st Dist. 1989). For "[c]onduct to be outrageous, [it] must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id.*

"Negligent infliction of emotional distress is not an independent tort," but rather a type of negligence claim. *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377 (6th Dist. 2010). "[T]o recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" *Id.* (citations omitted). "[S]erious emotional distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.*

There is no evidence of any extreme or outrageous conduct by Wells Fargo sufficient to support a claim for intentional infliction of emotional distress. Nor is there evidence of serious emotional distress sufficient to support Plaintiff's negligence claim for emotional distress.

The Court grants summary judgment to Wells Fargo on Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

## 3.   Unfair Competition Laws — § 17200

California's Unfair Competition Law ("UCL") "prohibits 'unfair competition,' which is defined as any 'unlawful, unfair, or fraudulent business act or practice.'" *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1164 (N.D. Cal. 2013)

1   (quoting Cal. Bus. & Prof. Code § 17200).  In opposing summary judgment, Plaintiff

2   does not specifically identify which prong of the UCL Plaintiff is proceeding under,

3   however, Plaintiff's statement that Wells Fargo's conduct is fraudulent and unfair

4   suggests these prongs are at issue.[26]

5       "[A] fraudulent business act or practice is one in which members of the public are

6   likely to be deceived."  *Prakashpalan*, 223 Cal. App. 4th at 1134 (citing *Olsen v. Breeze*,

7   48 Cal. App. 4th 608, 618 (3rd Dist. 1996)).  The standard for an unfair business practice

8   is less clear with some California appellate courts requiring the public policy at issue be

9   "tethered to specific constitutional, statutory, or regulatory provisions."  *Drum v. San*

10  *Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2nd Dist. 2010) (citing *Bardin*

11  *v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260-61 (4th Dist. 2006)).  Another

12  line of cases considers "whether the alleged business practice 'is immoral, unethical,

13  oppressive, unscrupulous or substantially injurious to consumers and requires the court to

14  weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

15  victim.'"  *Id.* (citing *Bardin*, 136 Cal. App. 4th at 1260.)  And, finally, a third line of

16  cases, drawing on the Federal Trade Commission Act, requires that '(1) the consumer

17  injury must be substantial; (2) the injury must not be outweighed by any countervailing

18  benefits to consumers or competition; and (3) it must be an injury that consumers

19  themselves could not reasonably have avoided.'"  *Id.* (citing *Davis v. Ford Motor Credit*

20  *Co.*, 179 Cal. App. 4th 581, 597-98 (2nd Dist. 2009)).

21      Plaintiff argues Wells Fargo engaged in unfair and fraudulent conduct in

22  proceeding with foreclosure after misinforming him about his obligations and

23  misrepresenting information in the foreclosure process.  More specifically, Plaintiff

---

25  [26] The claim cannot proceed under the unlawful prong either because, as discussed above,
26  Plaintiff's other claims cannot succeed.  *Scripps Clinic v. Superior Court*, 108 Cal. App.
    4th 917, 937-38 (4th Dist. 2003) (Explaining that unlawful prong "borrows violations of
27  other laws and treats them as unlawful practices independently actionable," and finding
    prong is not met when there is no violation of another law).

1   points to Wells Fargo's representations concerning permanent financing, its failure to

2   provide a copy of Plaintiff's CLA, and the filing of deficient notices of default.  The

3   Court has already considered these arguments at length and finds Wells Fargo's conduct,

4   based on the evidence in the record, was not fraudulent or unfair.  The public would not

5   be likely to be deceived into thinking permanent financing was guaranteed when it was

6   given the many statements of limitation and condition in any document referencing

7   permanent financing and the absence of permanent financing in the CLA.  Certainly, it

8   was not immoral, unethical, oppressive, unscrupulous or substantially injurious to

9   consumers.  And, as to the notices of default, there was no deficiency with either (other

10  than the owner occupancy issue that prompted rescission of the first and issuance of a

11  second).  This single deficiency, that was corrected, does not reflect a fraudulent or unfair

12  business practice and would likely be shielded by § 2924(d)'s privilege.

13          The Court grants summary judgment to Wells Fargo on the unfair competition

14  claim.

15  **IV.   Exceeding the Scope of the Complaint**

16          As noted throughout this Order, the Court agrees with Wells Fargo that Plaintiff

17  seeks and opposes summary judgment on bases not alleged in the 4AC.  "[W]hen issues

18  are raised in opposition to a motion for summary judgment that are outside the scope of

19  the complaint, 'the district court should construe[] the matter raised as a request pursuant

20  to Rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of

21  time.'"  *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Apache*

22  *Survival Coal v. United States*, 21 F.3d 895, 910 (9th Cir. 1994)).  However, Federal Rule

23  of Civil Procedure 16(b) would apply here because amendment would require a

24  modification of the scheduling order.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

25  604, 607 (9th Cir. 1992).

26          Under "Rule 16(b)'s good cause standard, [that] primarily considers the diligence

27  of the party seeking the amendment," the Court finds Plaintiff has not shown good cause

31

for changing the bases for numerous claims at this late stage and without any notice to Wells Fargo.  *Id.*  Even if it were subject to the more lenient Rule 15 standard,[27] the Court would deny leave to amend.  Although it may not necessarily be in bad faith, there is undue delay.  The evidence these new theories are based on was available to Plaintiff before the most recent amended complaint was filed.  And, it is prejudicial to Wells Fargo because Plaintiff provided no notice of this change until moving for summary judgment.  *Pickern v. Pier 1 Imports*, Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (finding plaintiff's complaint failed to give notice of the factual allegations raised for the first time in opposition to summary judgment).  The new theories had to come as a surprise given the Court had granted Plaintiff leave to file what was collectively, including state and federal court proceedings, the fourth amended complaint.  These numerous opportunities for Plaintiff to amend also weigh against granting leave now under Rule 15.  Finally, as the Court's analysis in this Order demonstrates, amendment would be futile.

Although the Court finds Wells Fargo is entitled to summary judgment on the bases that exceeded the scope of the 4AC, as this Order reflects, the Court has fully considered and analyzed the claims as if Plaintiff had been granted leave to amend and still grants summary judgment to Wells Fargo.

## THIRD-PARTY MOTION TO DISMISS

Third-Party Defendant Remy Bickoff has filed a Motion to Dismiss Wells Fargo's Amended Third-Party Complaint against him.  (Docket No. 90.)  Wells Fargo's claims against Remy Bickoff are based on Wells Fargo's potential liability to Plaintiff.  Although the Court is doubtful Wells Fargo can state a claim against Remy Bickoff given the Court's ruling on summary judgment in favor of Wells Fargo, the Court finds it most

---

[27] Courts consider "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment" in deciding whether justice requires granting leave to amend under Rule 15.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 370 U.S. 178, 182 (1962)).

1  efficient to grant Wells Fargo leave to file an amended third-party complaint based on the
2  state of the facts following this Court's ruling on summary judgment.

3      If Wells Fargo elects to file an amended third-party complaint, it must be filed
4  within 14 days of the date this Order is filed and Remy Bickoff must file a response to the
5  amended pleading within 14 days of its filing.  The pending Motion to Dismiss and
6  related ex parte motion to excuse the late-filed Motion are **DENIED** as moot.

7                                    **CONCLUSION**

8      Plaintiff's Motion for Summary Judgment is **DENIED**.  Wells Fargo's Motion for
9  Summary Judgment is **GRANTED**.  The Clerk shall enter judgment in favor of Wells
10 Fargo and against Plaintiff on all claims and close the case.[28]  If Wells Fargo elects to file
11 an amended third-party complaint, the case may be reopened as between Wells Fargo and
12 Remy Bickoff.

13     **IT IS SO ORDERED.**

14 Dated:  June 13, 2016

15                                    _____
16                                    Hon. Roger T. Benitez
                                      United States District Judge

---

[28] Pursuant to Federal Rule of Civil Procedure 54, the Court finds there is no just reason
to delay the entry of judgment on the claims between Plaintiff and Wells Fargo.  The only
remaining claims in this case are third-party claims against Remy Bickoff that might not
proceed now that Wells Fargo's basis for its claims are resolved.  Additionally, as
evidenced by the briefing on the initial motion to dismiss the third-party complaint and
the most recent motion to dismiss the amended third-party complaint, the third-party
claims are based on very different facts and are only connected to the claims between
Plaintiff and Wells Fargo by the potential liability Wells Fargo faced from Plaintiff.

33